Good morning, Your Honors. My name is Brad Jewett. I represent the Plaintiff and the Appellant Eden Surgical Center. The District Court's decision in this action represents a dangerous erosion of the protections Congress intended for plan participants and beneficiaries when it created ERISA. The decision allows health care plans and administrators to refuse to communicate and provide the most basic plan benefit information, the most basic claims processing information, to assignee and or authorized representative medical providers. Now, ERISA was created to create transparency in the health care process by establishing disclosure requirements. ERISA's goal was and remains to protect plan participants and beneficiaries. The District Court's decision effectively removes authorized representative medical providers from the administrative process, and these are the parties most capable of understanding the health care claims processing and administration. Can I ask you, so we have the, you know, your client is standing here, I guess, trying to stand here in the shoes of an assignee, which there's issues with that, but also as an authorized representative, and that's what you're just referencing, right? My client, correct, Your Honor, before the surgical procedures were commenced, the beneficiary signed an assignment of rights and benefits. It clearly states that it was assigning my client the right to represent the beneficiary as an authorized representative, which is discussed in ERISA, and also as an assignee for the purpose of standing before the court. Okay, but so let's assume that your client was, in fact, making these inquiries in its role as the authorized representative. Yes. Okay, I know there's an issue that your opponent has with that, but let's assume that's true. Yes. If there were a violation in that respect, doesn't it have to be the patient or the, I can't, what's the name, what's the term? The beneficiary. The beneficiary, yes. Doesn't it have to be that person who you would be representing rather than the entity that you're representing now? Well, yes and no, Your Honor, and that's a good question, and it is a little confusing. As an authorized representative, my client was entitled, regardless of any anti-assignment provision, regardless of any issue of standing in this court, my client was entitled to file appeals and to request documents from the plan. Right. And it did that. Right. And it was denied any response. Okay. And I'm with you, so let's assume that there was a violation with respect to your client's inquiries as an authorized representative. Yes. All I'm saying is that for that violation, isn't the proper plaintiff the beneficiary herself, not your client? Yes. Who you're authorized to represent and therefore could come in in her name. Correct. Rather than Eden's own name. Right. And she would have been, she would have had the benefit of the information that would have been gathered. She's not here. That's what I'm saying. That's correct. Isn't that the problem with that aspect of your argument? Well, no. That's part of, that's only one part of the argument. The part of the defendant's, appellee's position is they did not need to communicate with my clients at any point in time because my client was also an assignee. So they refused to provide any of the information that their own plan documents, which we did not see until summary judgments were filed, that their own plan documents say they are required to provide the authorized representative. So my client did not have the opportunity to make a reasoned, informed decision about, A, how the plan, how the claims were processed, or, B, whether there was an anti-assignment provision. I'm still, and I do want to try to understand your argument. What I'm not getting is that I'm, I guess I'm telling you I'm willing to accept your argument that there was a violation on the defendant's part. Right. In not providing your client in its capacity as an authorized representative with certain information. Right. All I'm saying is that if that's the basis for your claim, it seems like your client does not have standing to be here as the plaintiff. The proper plaintiff is the beneficiary herself, and she's not here. Okay. And that brings me to the second part, and maybe this will be helpful. Maybe I'm not. I want to ask something related to that. The argument is raised in the briefs that you didn't really argue about this point that you were appointed the administrative representative below, and then you respond to that by saying, oh, yes, we did, for instance, on page 406 of the record. But I'm looking at page 406 of the record, and it does say this is what you argued below in the summary judgment motions. Defendants were aware that Eden is the appointed administrative representative and assignee for the patient. I grant you that's there, but there's no argument that relates to being the appointed representative. All that follows is argument about being an assignee. Is there some place where you raised this argument about being the appointed administrative representative below other than here? Because it doesn't appear to be here other than in three words. Do you see what I'm asking? No, I do, Your Honor, and I appreciate your question. First of all, I would point out that the court took this matter under submission, so we did not have the opportunity to discuss any questions or concerns that the district court may have had at a hearing. You couldn't make arguments on this issue in your motions below? Well, I believe we could. I mean, the whole idea is whether you have standing to do this, right? I mean, that's how it got thrown out, right? And you say now, what it seems to me is you say now we have standing as administrative representative, but didn't really, they say, you didn't really argue that below. You argued you were the assignee and we had all the problems with that, so now you're arguing this other thing. I'm just asking whether that's a new argument, and if not, where was it raised below? Did you just say you didn't need to raise it below? No, it's not really an argument that we have standing because we're the authorized representative. The point of the authorized representative reference is merely that these defendants had an obligation, regardless of the assignment, they had an obligation to give us documents. We are not here based on standing. Well, where is that argument below? That's an interesting argument, but the district court never had the chance to respond to that argument if you didn't make it. So did you make it below? I believe that we focused primarily on the anti-assignment issue. The assignments that were attached as exhibits clearly state that we were the authorized representative. I'm asking if the argument was made, not if you could have made it. No, we did not. So you didn't make that argument. We did not have the opportunity to present it to the court at a hearing, and it's probably. . . But you didn't make that argument in the motion papers. You didn't make the argument, but could have. It is possible we could have made that argument more clearly. I appreciate your candor. I'm just trying to figure out what was argued below. Sure. And frankly, we really didn't understand that we needed to make that argument. You didn't need to make it unless you intend to make it on appeal. Well, no. Our point on appeal is that we have standing as a derivative standing as an assignee based on the fact that they misrepresented and gave us misinformation. The documents were not furnished to us. We did not have access to them. I understand that argument. I thought you were making an additional argument based on being an administrative representative, but you're not. I'm not saying that, Your Honor. I'm saying that based on that fact, they should have provided us with these documents at the get-go. Okay. And that's my point. Okay. So the answer to my question that I initially asked you is that you're not claiming, as Judge Rogers just said, you're not claiming two separate bases for standing. No. So it all hinges on whether that anti-assignment provision is valid or not. Yes. Got it. Okay. Absolutely. So why don't you turn to that rather than talk about this authorized representative? Right. The point of that is merely that we should have been provided these documents based on authorized representative status in November or December when they were requested. That's it. It is not why we're here today because we're an authorized representative. That would be the benefit here. But if the anti-assignment provision is nonetheless enforceable, then none of that matters because you would be out anyway. Is that fair? I think that's fair. Okay. I think if they're not stopped from presenting that, then your logic is fair. Okay. So why are they not a stop then? That sounds like that's the heart of the appeal. So you've used up a good chunk of your time on irrelevant stuff, it sounds like to me. So what's your argument there? Just trying to answer the Court's questions, Your Honor. So the heart of our argument there is that when we look at the record here and when we look at what is necessary for a stopple, and when the district court looked at what's necessary for a stopple, we understand that there's misrepresentation, we understand that there's reasonable and detrimental reliance, and we understand that there is extraordinary circumstances, which the courts have defined as a promise that defendants reasonably expected to induce an action or forbearance, or alternatively, a showing of repeated misrepresentations over time. Those are the core, and then there's two additional standards that the Ninth Circuit applies, has applied in certain circumstances, but not to the question of derivative standing. And those additional elements are whether there was an ambiguous plan provision that reasonable people could disagree in terms of the, I'm sorry, as to the meaning or effect of that provision, and then the second is whether there was an oral representation regarding an interpretation of the plan. Okay. So the first one, that's why I was tempted to jump in. I mean, the language is clear, right? It's not like it's ambiguous. It says you may not assign, period. No? The language is clear, Your Honor. Okay. However, we did not have access to that language until we were filing cross motions for summary judgment. But at that point, you then knew that you couldn't be an assignee. At that point, we knew that that plan language contained that language, yes. But at that point, we believed we have come so far down this road that they are stopped from making this argument, or they have waived their opportunity to make this argument because they knew that we were claiming to be an assignee in November of 2014. And I understand that the law is that they don't have an affirmative duty to inform us out of the kindness of their heart. But when a medical provider makes a claim and files an appeal and says we're the authorized representative, not important, we're the assignee, at that point, reasonable communication would have called for them to say, there's a number of things they could have done. They could have said, you're an assignee. Our business pattern, our practice is that we don't communicate with assignees. So I'm sorry we can't communicate with you. So what's the date on which the suit was filed? The suit was filed, I believe, March 5, 2015. Okay. And when were you advised that there was this anti-assignment provision? Defendants were provided with a document request and an appeal on, I want to say, November 14th or maybe in November 11th, 2014, early. Right. So before you filed suit, you knew that there was an anti-assignment provision? No. Before we filed suit, we filed that request for an appeal and we filed the request for documents, and we received no response. Okay. I'm confused. I asked you two questions. So the first question I asked you was, when was the suit filed? You told me March 2015. Yes. I asked you, when did you learn that there was an anti-assignment provision? You said November 2014. I misunderstood. The answer to your question is, we received a letter from counsel two months later that said, hey, we have an anti-assignment provision. So that would have been May of 2015. Yes. But we did not receive the plan. We didn't even receive the one page that has the anti-assignment provision. So on one hand, we've been told by the claims administrator telephonically, explicitly, no, there's no anti-assignment provision, which we then relied on and filed a suit. And then we filed the suit two months later. Counsel sends me a letter and says, well, we – Did you call counsel and say, we received your letter. We're really puzzled by this. Do you mind sending us the page from the documents? It seems like that would be really easy to do. And I can't imagine any reason why any reasonable counsel on the other side would decline to send you a copy of the page. There's probably something you could have gotten from your client, right? I'm sorry. From the beneficiary. No, we contacted the beneficiary, and the beneficiary declined to provide us any materials. The beneficiary wasn't cooperating with you? Correct. Well, that's a bad situation. But at that point, you probably have to contact opposing counsel and say, thank you for your letter. This is the first we've heard of this. We'd understood contrary. Would you mind sending us the page from the documents? Opposing counsel made his position very clear in his initial disclosure statement. I don't know. I believe it was filed a month or two later, but I'm not positive about that. It's in the record. And his statement was, there are four categories of documents that might be relevant to this case, and we will produce none of them until a protective order is put in place. So then – so the answer is no, he will not give me that document. And then we did not receive a protective order. So that statement, what you said, was made a couple of months after you received the letter? So that would have been maybe in the summer of 2015? I would have to check the record, Your Honor. But roughly? Roughly. I mean, initial disclosures are usually exchanged within three or four months of filing the lawsuit. But you didn't contact counsel in the meantime by telephone or by e-mail to say, boy, this is troubling to us. This is the first we've heard of it, and it's contrary to what we've been told before. Would you mind sending us just a copy of that page? You know, it's very possible I did, Your Honor. I just don't remember. Okay. Because it struck me as odd. I've filed a number of ERISA collection actions before, and never ever have I not received at the very least the summary plan description after the case was filed. They often refuse to provide other materials, and that's a different discussion. But I've never seen counsel refuse to produce the most basic plan document that, I mean, I was at a loss. So I don't recall. I wouldn't be surprised if I talked to him about it after his letter, but I don't honestly remember. Okay. I will give you a couple of minutes for rebuttal. Okay. Thank you, Your Honor. Someone left some notes up here. They probably go in the briefcase, so. It's called Dropsy. May it please the Court, Doug Janicek on behalf of the Appellees, which I will refer to as cognizant or the plan. Before I get to the specific points of waiver and estoppel, I just want to take one minute to give kind of an overview of the context of this case. Over the years, Eden and Mr. Reich have filed a lot of ERISA lawsuits against health plans. Look at the facts of this case, and you see that Eden set out to manufacture yet another lawsuit out of an alleged failure to provide plan documents. But there's no dispute that there was a valid anti-assignment clause that prohibited the plan participant, which I will refer to as NG, from assigning to Eden any claims that he might have. And the district court got it right. Cognizant did nothing that precluded it from invoking the clause in this litigation. In fact, had cognizant responded to Eden's pre-suit demands, Eden probably would have turned around and argued there was waiver based on that response. Cognizant shouldn't be punished for trying to avoid that trap, which is definitely out there when you look at the cases of waiver and estoppel. It seems to me just an indication that you're not the proper party might have been courteous and avoided all this. I mean, it's like we're not going to talk to you. I'm looking at the page 18 of the reply brief where they sort of say, they say in sort of shotgun fashion, these are all the things they did and what you did. They say, Eden attempted to participate in the administrative process but was ignored. Is that true? Well, Your Honor, yes. More or less, yes, it is, right? Well, because. I'm not saying because. It's true, right? Okay, so that's true. The defendants claim to have a policy of not communicating with medical provider S&Es, and consequently they ignored the demand appeal and letter with no explanation. That's basically true, right? You may have reasons for it, but that's true as well, right? From an S&E, correct. Yeah. Well, I'm assuming we got through that before in the prior questioning. We're dealing with them as an S&E, right? Defendants also provided false information regarding the plan's anti-assignment provision. At some level, that happened too, right? But that came after the surgery, Your Honor. Right, but this is true. Then Eden relied on the defendants. This is what they say, but no reason to doubt it. They relied on defendants' anti-assignment provision misrepresentation when it elected to pursue the disclosure and benefits. Well, they must have relied on something, and there stands to reason they might have done that. And defendants failed to assert any standing-based affirmative defense or identify any assignment provision in their answer to the First Amendment complaint. Is that true? Well, there's no duty to assert it. I'm not just asking the facts. Those are all facts, right? Or I'm just trying to see if the – because when you add them all up together, you can say, well, we had this reason for not doing that and we had that reason for not doing this, and each one by itself makes sense, but when you look at them all, it looks like an unreasonable proceeding. But the May 22 letter came just two months after they filed suit where we notified them of the anti-assignment provision. You did send them a copy of the page. We did not, Your Honor. And you could have done that. You know, as a matter of business practice, I'm not going to argue with that. But as a legal matter – I understand you have legal arguments, but it sure looks like you weren't proceeding in a way that's designed to have the whole system work very efficiently. If you tell these people, look, you're not – we have an anti-assignment, or just send them a copy of something and circle it or something. I mean, I don't know. What is it? How hard can it be? Communication goes both ways, Your Honor. Before they filed suit, they never asked the plan participant for a copy of the plan. And it's undisputed in this record. Well, but they say they have trouble with the plan. They don't communicate well. That was only after they filed suit. Before they filed suit, they had no communication with the plan participant about getting a copy of the plan. And, in fact, in January – Is that in the record? It is, Your Honor. I'm just asking. That's fine. Okay. Well, that partially answers my question. Thank you. And keep in mind, in January of 2015, before they filed suit, there's an email in the record, and this is at ER 552. January 31st, 2015. This is less than – this is about six to eight weeks after the initial demand letter and the appeal goes out, and the email is to opposing counsel from Eden that confirms, quote, in preparation for the suit and subsequent filing, close quote, it's a, quote, negative in terms of finding the plan on the Internet. As of January, they were planning to file suit. There was no good faith effort on their part. Okay, I understand that. The thrust of your response appears to be that it's treacherous for you to even contact them. And I can understand maybe it is, but if your indications that we're not going to be in contact with you – I don't know, if you have something which indicates that they're not an assignee and you could just attach it, it's hard to imagine that that's going to threaten you very much, and it would be enormously useful. Your Honor, as a business practice, I'm not going to argue with that. All right, thank you. That's all I'm asking. But we cited, and it's at, in our brief, Pelham's brief 24 to 25, four cases that have held that there is no affirmative duty to disclose the anti-assignment provision. And so given the cases where people begin responding to appeals, you do start down that path of, is that a possible waiver? So Aetna and Cognizant made the reasonable choice here to say, we are not going to respond to appeals from assignees. And it clearly was from the assignee. If I may point out, the first line of the appeal says, and this is at ER 174, Aetna Surgical Center hereby appeals, not NG, Aetna, and their demand letter starts out, ESC, Aetna Surgical Center, is the assignee. We understand that. So it's a... The question is whether they had noticed that they couldn't be the assignee. And you say, well, it's up to them to figure it out, and I understand that as well. But when you know, and you know it makes a big difference, and you can pretty well darn tell that they're relying on the fact, they're relying, or they're doing this in ignorance of this and probably wouldn't be doing it if they knew about it. It just seems like, yeah, we could have done it, but we didn't have to, so we didn't. I take issue with the ignorance, though, Your Honor. It's a key fact here that they did not contact NG before filing suit. And even after suit was filed, they never served any discovery. Not one RFP. We don't have it. Case after case says under Rule 26 there is no disclosure obligation. You have to serve an RFP in federal court. They never did that. They didn't want the planned documents. This was about setting up this lawsuit to try to get something out of it. And if you look, if you really look at the timeline, you will see clearly that process leading up to the discovery closes it. You're suggesting that they purposely didn't try to find out so that they could bring a nuisance suit into effect. I can't speak to their intent. That's kind of what you're saying. You're saying that might be the case. There's no good faith effort. I think we can safely say that if you don't even contact the planned beneficiary about getting a copy of the plan, when it's undisputed they have 24-hour access to that plan. This is an issue between the planned beneficiary and the provider. If you're going to provide services ahead of time, get the planned documents from them. The burden falls here on the provider to make sure that they have the communication with the planned beneficiary. It just seems a little like you're both playing hardball. That's fine, but it takes up the resources of the courts when you all do this kind of stuff. Of course, Your Honor, if they had at the time we sent that letter, somehow took action in the district court to let them know, hey, wait a minute, there's an anti-assignment clause. By the way, the district court pointed that out in footnote four of his decision where he said, I'm not going to get into – I'm just saying. I understand, Your Honor. Again, the district court did consider that issue and said, I'm not going to get into strategy decisions in terms of litigation. Should I file? Should I not file? He said that was beside the point. If I may go to the issue of estoppel, just to be clear, I think there was a question about the plain language of the plan. That is correct. Under Ninth Circuit law, in footnote 14 of their opening brief at page 29, they agree that you have to also show that the plan provisions were ambiguous in order to apply estoppel. And that's if you get past extraordinary circumstances. And you can't do that here. The plan clearly has an anti-assignment clause. They raised the first phone call. The first phone call had nothing to do with the anti-assignment clause. That had to do with UCR, which is a method of calculating benefits. Whatever mistake was made there has nothing to do with the anti-assignment clause. And if there was estoppel based on that, again, it's the plan beneficiary that has to bring the action. Is there only one time when they were told that the plan did not have an anti-assignment provision? Correct. That was in August after, I apologize, it was in January. Of 2015? Correct. After the demand letter and appeal were filed in mid-January, the phone call. Okay, but it's long after the surgery, right? Correct. So you have the issue. There's no detrimental reliance because the surgery had already been performed. Right. So that's what I don't, I guess I'm just still a little puzzled as to the basis for their claim. Ultimately they're trying to recover benefits under the plan? Well, it's an interesting question, Your Honor. We argued the UCR calculations plain and unambiguous in our answering brief. They said nothing about it in reply. It seems to be that it's not even a benefits issue anymore. They kind of went towards just they want their fees for having to file this action. And as Your Honor was pointing out, could it have been avoided maybe with a different business practice? They really have sort of a double estoppel problem. The first one is they have to get past the anti-assignment provision for which they claim that you gave them bad advice. And if they can get past that so that we nullify the anti-assignment provision, then we'll go on to the question as to whether they were misled about what the plan would pay prior to the surgery. Correct. You don't even get there unless they can properly bring it through. But there's really two different estoppel claims here. Yes, there's the pre-surgery and then the post-surgery. And the pre-surgery one had nothing to do with the anti-assignment clause. That is undisputed. There was no question about it. The question had to do with how do you calculate the benefits. It was only after the surgery was over that Eden called after they sent their appeal and asked the question, is there an anti-assignment clause? And again, when you have unambiguous plain language like that, how can you have estoppel from an Aetna operator essentially making a mistake and giving the wrong information? Again, you don't even ask the plan beneficiary for a copy of the plan documents before filing suit. And as to the benefits issue, again, there's really no argument in the reply at all about it. And it would be hard to make any argument because it clearly says you used the Medicare rates. Statutory penalties here, again, even if you can get to that issue, this is not a case for statutory penalties. Maybe you have something that could have happened that would have clarified before we got to this point, but that goes both ways. This suit was filed pretty darn quickly after that appeal was filed. They had their mind made up in January 2015. And again, you know, catch 22 here. A lot of these plans have to be careful that they don't engage improper S&Es before they get a waiver argument back on that. So they wisely. The concern is that by dealing with them, you will recognize them as an S&E. Correct. There are case after case where arguments are made. But anything you say could have a big black thing saying this piece of paper doesn't recognize you as an S&E. Yes. And then have a paragraph showing why they're not an S&E. No reasonable court is going to interpret that as recognizing someone as an S&E, is it? You know, I understand that, Your Honor. And, again, but the case is at hand. Do you see what I'm saying? I understand, sir. I do understand. There's no knowledge requirement. The anti-assignment clause applies whether you know it or not. And so this is just one of those cases where, you know, things could have been done before a suit was filed perhaps, but there really wasn't much time, six weeks before they made that decision that we're going to sue. In terms of going on about the statutory penalties, again, no bad faith, intentional misconduct on Cognizant's part. And, again, where's the prejudice? There's no benefits claim anymore. So the prejudice is that they had a foul suit. And the district court specifically in footnote four said that's not going to do it. And, in fact, and I just want to leave with this thought, in Crotty v. Cook, 121F3D541, cited in our papers, 9th Circuit, 1997, it clearly says if you don't have entitlement to benefits, a coverable basis for seeking benefits, you don't have a right to seek fees or statutory penalties. It clearly states, if you read in footnote four, Crotty, the plaintiff in that case, even though Crotty seeks statutory damages and attorney's fees against Appelese, that alone will not establish ERISA standing. So, again, there is no prejudice here. Certainly not extraordinary circumstances warranting ignoring the anti-assignment clause as a defense in this litigation. Thank you. Roberts. Thank you, Mr. Janicek. Mr. Jewett. Jewett. Thank you. I'd like to respond to a couple of points made by counsel, unless the Court has other questions it would like to ask first. No? So the suggestion is that my client was attempting to manufacture a lawsuit, and I take issue with that. The requests were made for the appeals and for documents on November 21st, 2014. The email referenced regarding contact looking for the plan online in preparation for a potential lawsuit, and, again, looking for the plan online and not finding it. That was January 31st. So that's two and a half months after sending requests for documents and the appeals that were completely ignored. So I don't know how much longer my client should have waited before it would seem like an acceptable amount of time of being ignored before they would consider filing a lawsuit that ultimately wasn't filed for another month and a half, roughly. But I don't think that there's merit to that argument. Counsel suggested that Cognizant did nothing to waive its anti-assignment provision, but, in fact, our only access point was through Aetna, where we were told there is no anti-assignment provision. So that's an active waiver right there. And then, as the Court pointed out, it would have been very easy to send a letter saying, we're not going to negotiate with you, Eden, because you're an assignee, but here's the summary plan description, and that's going to clarify for you that you would not have standing to bring a lawsuit, so don't do it or you'll lose. And then we're not here right now. Very simple communication is all that was necessary. Now, counsel noted that we relied on the anti-assignment provision misrepresentation for filing this lawsuit, but prior to that, we relied on the misrepresentation that the plan would reimburse my client according to UCR. That was the first misrepresentation, which the district court missed. And if we had been given accurate information that this was going to pay at a Medicare rate, why would my client have performed two surgeries that would result in it getting paid $0? Did you raise that below? They say you didn't. It is in our brief that we were, that they were misrepresented, that they represented. Again, there's like one sentence that's in your brief, but the argument that you're making, that that is a basis for estoppel, that wasn't made below, is that correct? It was not articulated as well as it could be below. In hindsight, I, you know, we looked at the anti-assignment. I would have a hard time disagreeing with you on it. Okay. That's all I'm asking. But we also didn't have the opportunity. If the district court thought that was the critical thing, that we didn't, that we were only relied on the anti-assignment provision, which is not correct, if that was the. You seem to be saying, well, we can argue anything on appeal that we didn't argue below because the district court didn't ask for it or because I didn't have oral argument. But those aren't reasons to say that we'll look at some, we'll look at how a district court erred in missing an argument that wasn't raised below. I believe it was raised. I don't believe it was briefed as thoroughly as it should have been, Your Honor. And that's, that falls on me. Well. So I understand the court's position. To say there was a representation in half a sentence isn't really raising that argument as a basis for estoppel. I understand the court's position. Okay. You're over your time, counsel. You may want to wrap up. I will wrap up. I'd like to just make one final comment, which is that there's a suggestion that there was no prejudice to my argument, to my client, and that there is no benefits claim. But we filed a motion for summary adjudication because we could not prosecute our benefits claim because we were provided with no information. So how do you, how do you, how do you prove you're right or wrong on a benefits claim when you've been denied access to every single piece of evidence? So the prejudice is that we were denied the ability to access the court and to fairly prosecute our claims. And hopefully the matter will be remanded and we'll have the opportunity to move forward on our benefit claim and deal with the double estoppel issue to the extent the court decides not to. It's a wonderful opportunity for the court to determine how the Ninth Circuit feels about estoppel in light of derivative standing. Okay, thank you. Thank you. Thank counsel for the argument. Case is submitted.
judges: Rogers, Bybee, Watford